**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| CREATIVE PLASTIC CONCEPTS, LLC;<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL PRECISION COMPONENTS CORPORATION;<br><br>Defendant. | ) | No. 26-cv-9889<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR WILLFUL PATENT INFRINGEMENT**

Plaintiff Creative Plastic Concepts, LLC ("CPC") for its Complaint for willful patent infringement against Defendant International Precision Components Corporation ("IPCC") alleges as follows:

**INTRODUCTION**

1. CPC is a leading designer and manufacturer of innovative plastic-injection molded products for the home and garage storage and waste receptacle end-markets.

2. CPC has made significant investments in the research, design, development, and marketing of its products.

3. Prior to CPC's invention disclosed in U.S. Patent No. 11,938,666 (the "'666 Patent"), manufacturers of plastic totes manufactured their totes via a conventional injection molding method. Under the conventional method, molten material is injected into the mold cavity through gates on a bottom wall of the mold.

4. An example of the conventional method is demonstrated in FIG. 1 of the '666 Patent, shown below, which demonstrates how molten material is injected into the mold cavity through gates on the bottom wall of the mold:




FIG. 1
(PRIOR ART)

5. The location of the injectors into the mold cavity can be determined from the location of sprue marks in the final product plastic tote. In the conventional method demonstrated in FIG. 1, the final product tote would have sprue marks at the locations of the injectors, as indicated in red in the marked-up FIG. 1 below:




FIG. 1
(PRIOR ART)

6. Manufacturing plastic totes in this way requires relatively large amounts of clamp tonnage and injection pressure to ensure the mold is completely filled. And the resulting plastic tote would have relatively high stress points on the bottom walls, leading to a less durable final product. In addition, the conventional method often required melt temperatures to be elevated above recommended manufacturing ranges to reduce viscosity and improve flowability of the molten material. This, too, degrades the thermoplastic physical properties, further decreasing the final product's quality and strength.

7. Accordingly, through CPC's continuing innovative efforts, CPC invented a method as disclosed in the '666 Patent, which results in plastic totes with improved quality and strength. The method disclosed in the '666 Patent requires less clamp tonnage and injection pressure, and the method requires less fill time than the conventional method. Accordingly, the

method disclosed in the ’666 Patent is advantageous over the conventional method and the prior art.

8. Claim 1 of the ’666 Patent requires, among other things, a “plurality of injectors including a first pair of injectors disposed through the first side surface [of the mold] and a second pair of injectors disposed through the second side surface [of the mold]” and “injecting the molten material through the plurality of injectors disposed through the plurality of side surfaces of the mold into the cavity and not through the bottom wall.”

9. A plastic tote manufactured according to the method claimed in claim 1 of the ’666 Patent therefore could be identified by a first pair of sprue marks on the first side surface of the final tote product, a second pair of sprue marks on the second side surface of the final tote product, and no sprue marks on the bottom wall of the final tote product. For example, the tote shown below is manufactured via the method claimed in the ’666 Patent and has sprue marks as described above:

**27-Gallon Tote Manufactured Via the Method of Claim 1 of the ’666 Patent**



| **27-Gallon Tote Manufactured Via the Method of Claim 1 of the ’666 Patent** |
| --- |
|  |
|  |

10. Rather than innovate, IPCC infringed CPC’s claimed method in order to improve its manufacturing methodology, resulting in totes with improved quality and strength.

11. That IPCC is infringing CPC’s claimed method is demonstrated by the sprue marks on IPCC’s 27-Gallon tote. As shown below, IPCC’s 27-Gallon tote has a first pair of sprue marks on the first side surface of the final tote product, a second pair of sprue marks on the second side surface of the final tote product, and no sprue marks on the bottom wall of the final tote product:

| IPCC 27-Gallon Tote |
| --- |
|  |
|  |

| IPCC 27-Gallon Tote |
| --- |
|  |

12. By making products by the method claimed in the ’666 Patent, IPCC has infringed and is infringing at least claim 1 of the ’666 Patent.

13. In addition, rather than innovating, IPCC infringed the designs for CPC’s 12-Gallon lid and latch in IPCC’s 12-Gallon tote, shown below:



14. CPC has patent protection in these designs, and CPC is the owner of U.S. Patent Nos. D744,239 (the "'239 Patent") and D768,385 (the "'385 Patent"). By infringing CPC's patented designs, IPCC has infringed CPC's patents in those designs.

**PARTIES**

15. Plaintiff Creative Plastic Concepts, LLC is an Ohio limited liability company with a principal place of business at 206 South Griffith Street, Sycamore, Ohio 44882.

16. On information and belief, Defendant International Precision Components Corporation is an Illinois corporation with a principal place of business at 28468 N. Ballard Drive, Lake Forest, IL 60045.

**JURISDICTION AND VENUE**

17. This is a complaint for patent infringement arising under the patent laws of the United States (35 U.S.C. § 101 *et seq.*). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

18. This Court has personal jurisdiction over IPCC. IPCC has its principal place of business in this District, is incorporated in Illinois, has committed and continues to commit acts of infringement in this District, and has conducted business in this District and/or engaged in continuous and systematic activities in this District.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) because, on information and belief, IPCC resides in this District, and/or because IPCC has a regular and established place of business and has committed acts of infringement in this District by making, using, offering to sell, selling products that infringe CPC's patents at issue in this lawsuit.

## FACTUAL BACKGROUND

**U.S. Patent No. 11,938,666**

20. CPC owns all right, title, and interest in, and has the right to sue and recover for all infringements of the ’666 Patent, which matured from App. No. 17/085,460.

21. App. No. 17/085,460 was filed on October 30, 2020 and claims priority to App. No. 62/928,019, which was filed on October 30, 2019. The U.S. Patent and Trademark Office duly and legally issued the ’666 Patent on March 26, 2024. A true and correct copy of the ’666 Patent is attached as Exhibit 1 to the Complaint.

**U.S. Patent No. D744,239**

22. CPC owns all right, title, and interest in, and has the right to sue and recover for all infringements of the ’239 Patent. A true and correct copy of the ’239 Patent is attached as Exhibit 2 to the Complaint.

**U.S. Patent No. D768,385**

23. CPC owns all right, title, and interest in, and has the right to sue and recover for all infringements of the ’385 Patent. A true and correct copy of the ’385 Patent is attached as Exhibit 3 to the Complaint.

**IPCC’s Infringing Activities**

24. On information and belief, IPCC makes, uses, sells, offers for sale and/or imports industrial storage totes, including but not limited to the Performax 27-Gallon Black Industrial Storage Tote with Snap-On Lid, publicly available for sale in-store and online, including at Menards stores and the Menards website (collectively, the “Accused Totes”).

25. On information and belief, the Accused Totes are manufactured by IPCC via a hot runner injection molding process. That the Accused Totes are manufactured via a hot runner

injection molding process is evidenced at least by the sprue marks on the body of each of the Accused Totes. The sprue marks are physical indications of where the molten material from the injection molding process is injected into the cavity of the mold for an Accused Tote when the mold is in a closed position. As shown below, each of the Accused Totes has two sprue marks on each of the longer sides of the body of each Accused Tote:




26. Additionally, each of the Accused Totes has one sprue mark on each of the shorter sides of the body of each Accused Tote:



27. As further shown below, the Accused Totes have no sprue marks on the bottom wall of the body of Accused Totes, indicating that no molten material was injected into the cavity through the bottom wall:



28. On information and belief, the shape of the Accused Totes, including but not limited to the existence and location of sprue marks, indicate that the Accused Totes have been manufactured via a method that infringes at least claim 1 of the ’666 Patent.

29. IPCC makes, uses, offers for sale, and/or sells in the United States and/or imports into the United States the Accused Totes without CPC’s authorization.

30. Upon information and belief, the Accused Totes are manufactured via the methods claimed in the ’666 Patent.

31. IPCC has infringed, and continues to willfully infringe, the ’666 Patent by making and manufacturing the Accused Totes in this District and elsewhere in the United States, without the consent or authorization of CPC. IPCC has infringed, and continues to willfully infringe, the ’666 Patent by selling and offering for sale the Accused Totes in this District and elsewhere in the United States, without the consent or authorization of CPC.

32. On information and belief, IPCC also makes, uses, sells, offers for sale and/or imports 12-Gallon industrial storage totes with latching lids, including but not limited to the Performax 12-Gallon Black Industrial Storage Tote with Latching Lid, available in-store and online at Menards. The lid of the 12-Gallon industrial storage totes is hereinafter referred to as the "Accused Lid," and the latch of the 12-Gallon industrial storage totes is hereinafter referred to as the "Accused Latch."

33. An example of the Accused Lid is shown below:



34. An example of the Accused Latch is shown below:



35. IPCC makes, uses, offers for sale, sells, and/or imports into the United States the Accused Lid and the Accused Latch without CPC's authorization.

36. The Accused Lid is the invention claimed in the '239 Patent, as shown below:

| U.S. Pat. No. D744,239 | Accused Lid |
|---|---|
|  FIG. 1 |  |

| U.S. Pat. No. D744,239 | Accused Lid |
| --- | --- |
|  FIG. 2 |  |

| U.S. Pat. No. D744,239 | Accused Lid |
|---|---|
|  FIG. 3 |  |
|  FIG. 4 |  |

| U.S. Pat. No. D744,239 | Accused Lid |
| --- | --- |
|  FIG. 5 |  |

37. The Accused Latch is the invention claimed in the ’385 Patent, as shown below:

| U.S. Pat. No. D768,385 | Accused Latch |
| --- | --- |
|  FIG. 1 |  |

<table>
<tr><th>U.S. Pat. No. D768,385</th><th>Accused Latch</th></tr>
<tr><td><br>FIG. 2</td><td></td></tr>
<tr><td><br>FIG. 3</td><td></td></tr>
</table>

| U.S. Pat. No. D768,385 | Accused Latch |
|---|---|
|  FIG. 4 |  |
|  FIG. 5 |  |

38. On information and belief, IPCC's infringing of CPC's designs was deliberate.

39. IPCC has infringed, and continues to willfully infringe, the '239 Patent by making, using, selling, offering to sell, and/or importing the Accused Lid in this District and elsewhere in the United States, without the consent or authorization of CPC.

40. IPCC has infringed, and continues to willfully infringe, the '385 Patent by making, using, selling, offering to sell, and/or importing the Accused Latch in this District and elsewhere in the United States, without the consent or authorization of CPC.

41. On November 27, 2023, counsel for CPC sent a letter to IPCC (the "2023 Letter"). In the 2023 Letter, CPC asserted, among other things, that IPCC infringed the '239 Patent and the '385 Patent.

42. IPCC received the November 2023 Letter. On December 13, 2023, counsel for IPCC sent a letter stating that IPCC would pursue defenses if CPC continued to pursue the infringement claims against IPCC. IPCC did not agree to cease its infringing activities at that time. IPCC had notice of the ’239 Patent and the ’385 Patent since at least as early as November 27, 2023.

43. On June 18, 2026, counsel for CPC sent another letter to IPCC (the “June 2026 Letter”). In the June 2026 Letter, CPC asserted that IPCC infringed each of the ’666, ’239, and ’385 Patents (the “Asserted Patents”).

44. IPCC received the June 2026 Letter, and IPCC had notice of the Asserted Patents since at least as early as June 18, 2026 (or earlier, as alleged herein).

45. Because IPCC had notice of the Asserted Patents, IPCC had knowledge of each of the Asserted Patents prior to the filing of this Complaint or engaged in willful blindness as to the Asserted Patents.

46. Despite its knowledge of and/or willful blindness to the Asserted Patents, IPCC proceeded to make, use, sell, offer for sale, and/or import the Accused Totes, the Accused Lids, and the Accused Latches in egregious disregard of the Asserted Patents.

**COUNT I**
**(Patent Infringement Under 35 U.S.C. § 271 of the ’666 Patent)**

47. CPC re-alleges and incorporates by reference the foregoing paragraphs of the Complaint as though set forth fully under this Count.

48. IPCC, without authorization from CPC, has made, used, offered for sale, sold, and/or imported in or into the United States, and continues to make, use, offer for sale, sell, and/or import in or into the United States totes manufactured via the method claimed in the ’666 Patent, including at least the Accused Totes. IPCC’s actions alleged herein constitute

infringement of at least claim 1 of the ’666 Patent, either literally or under the doctrine of equivalents.

49. The Accused Totes indicate that IPCC infringed each and every limitation of claim 1 of the ’666 Patent when it manufactured the Accused Totes.

50. The preamble of claim 1 of the ’666 Patent states: “A method for manufacturing a storage container with an injection molding process.”

51. Without regard for whether the preamble of claim 1 of the ’666 Patent is limiting, IPCC manufactures the Accused Totes, which are storage containers, using an injection molding process as alleged herein.

52. Claim 1 of the ’666 Patent also recites: “providing a mold having a top wall, a bottom wall, and a plurality of side surface, the plurality of side surface includes a first side surface, a second side surface, a third side surface and a fourth side surface, the mold includes two sections, wherein the mold is in the closed position, a cavity is formed between the two sections…”

53. Upon information and belief, the Accused Totes are manufactured via a mold having a top wall, a bottom wall, and a plurality of side surfaces, the plurality of side surfaces includes a first side surface, a second side surface, a third side surface, and a fourth side surface, the mold includes two sections, wherein the mold is in a closed position, a cavity is formed between the two sections, which can be seen based on inspection of the Accused Totes.

54. Claim 1 of the ’666 Patent also recites: “the mold further includes a plurality of injectors directed into the cavity when the mold is in the closed position, the plurality of injectors including a first pair of injectors disposed through the first side surface and a second pair of injectors disposed through the second side surface.”

55. Upon information and belief, the Accused Totes are manufactured via a mold that includes a first pair of injectors disposed through the first side surface and a second pair of injectors disposed through the second side surface, which is evidenced by sprue marks on the Accused Totes. As shown in the image below:




56. Claim 1 of the ’666 Patent also recites: “providing a molten material.”

57. Upon information and belief, the Accused Totes are manufactured using a molten material, specifically a molten plastic resin provided by IPCC, as provided on IPCC’s website[1] which states:

> Our state-of-the-art engineering center and tool room bring your application from concept to mold, to final product. Rapid CAD engineering with FMEA analysis provides the manufacturing group with the necessary information for your custom part.
>
> Over 80 injection molding machines provide the production capacity for the most demanding of applications. All IPCC machines are equipped with a detailed process monitoring system, **IQMS**, assuring our customers of the highest quality control standards and lowest manufacturing costs. IPCC uses IQMS to ensure all products are manufactured using the correct plastic resin and necessary additives.

[1] IPCC’s website is available here: https://ipcclakeforest.com/operations/.

58. Claim 1 of the ’666 Patent also recites: “positioning the plurality of injectors along the plurality of side surfaces at a desired height and a desired lateral position to achieve a balanced fill of the cavity” and “injecting the molten material through the plurality of injectors disposed through the plurality of side surfaces of the mold into the cavity and not through the bottom wall.”

59. Upon information and belief, as part of IPCC’s process for manufacturing the Accused Totes, the plurality of injectors along the plurality of side surfaces are positioned at a desired height and a desired lateral position to achieve a balanced fill of the cavity, and that the molten material is injected through the plurality of injectors disposed through the plurality of side surfaces of the mold into the cavity and not through the bottom wall, as evidenced by the sprue marks on the Accused Totes. As shown in the image below:

| IPCC 27-Gallon Tote |
| --- |
|  |

| IPCC 27-Gallon Tote |
| --- |
|  |
|  |

60. Claim 1 of the ’666 Patent also recites: “removing the manufactured storage container from the mold.”

61. Upon information and belief, the Accused Totes are ultimately removed from the mold, as evidenced by the suction marks on the bottom of the Accused Totes:



62. Therefore, by manufacturing the Accused Totes, IPCC directly infringes at least claim 1 of the ’666 Patent under 35 U.S.C. § 271(a).

63. IPCC offers for sale and/or sells the Accused Totes within the United States.

64. By subsequently selling and offering for sale the Accused Totes, IPCC directly infringes at least claim 1 of the ’666 Patent under 35 U.S.C. § 271(g).

65. CPC has suffered, and continues to suffer damage, including economic harm, as a result of IPCC’s infringement in an amount to be proven at trial.

66. IPCC had actual knowledge of the ’666 Patent, and knew or should have known that its actions constituted infringement of the ’666 Patent or at least an unjustifiably high risk of infringement of the ’666 Patent.

67. CPC has been and will continue to be irreparably harmed by IPCC’s infringement of the ’666 Patent.

68. CPC has no adequate remedy at law for IPCC’s infringement of the ’666 Patent.

69. On information and belief, IPCC's infringement of the '666 Patent will continue unless enjoined by this Court.

**COUNT II**
**(Patent Infringement Under 35 U.S.C. § 271 of the '239 Patent)**

70. CPC re-alleges and incorporates by reference the foregoing paragraphs of the Complaint as though set forth fully under this Count.

71. IPCC, without authorization from CPC, has made, used, offered for sale, sold, and/or imported in or into the United States, and continues to make, use, offer for sale, sell, and/or import in or into the United States, tote lids having designs that infringe the '239 Patent, including at least the 12-Gallon industrial storage totes with latching lids.

72. IPCC directly infringes the '239 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling and/or importing the 12-Gallon industrial storage totes with latching lids, because in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the Accused Lids are substantially the same as the '239 Patent, since the resemblance between the two is such as to deceive the ordinary purchaser, inducing the observer to purchase one supposing it to be the other.

73. The aforementioned resemblance between the Accused Lids and the '239 Patent is apparent when comparing the similarities in the overall claimed design of the '239 Patent and the design of the Accused Lids.

74. CPC has suffered, and continues to suffer damage, including economic harm, as a result of IPCC's infringement in an amount to be proven at trial.

75. IPCC had actual knowledge of the '239 Patent, and knew or should have known that its actions constituted infringement of the '239 Patent or at least an unjustifiably high risk of infringement of the '239 Patent.

76. CPC has been and will continue to be irreparably harmed by IPCC's infringement of the '239 Patent.

77. CPC has no adequate remedy at law for IPCC's infringement of the '239 Patent.

78. On information and belief, IPCC's infringement of the '239 Patent will continue unless enjoined by this Court.

**COUNT III**
**(Patent Infringement Under 35 U.S.C. § 271 of the '385 Patent)**

79. CPC re-alleges and incorporates by reference the foregoing paragraphs of the Complaint as though set forth fully under this Count.

80. IPCC, without authorization from CPC, has made, used, offered for sale, sold, and/or imported in or into the United States, and continues to make, use, offer for sale, sell, and/or import in or into the United States, tote latches having designs that infringe the '385 Patent, including at least the 12-Gallon industrial storage totes with latching lids.

81. IPCC directly infringes the '385 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling and/or importing the 12-Gallon industrial storage totes with latching lids, because in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the Accused Latch is substantially the same as the '385 Patent, since the resemblance between the two is such as to deceive the ordinary purchaser, inducing the observer to purchase one supposing it to be the other.

82. The aforementioned resemblance between the Accused Latch and the '385 Patent is apparent when comparing the similarities in the overall claimed design of the '385 Patent and the design of the Accused Latch.

83. CPC has suffered, and continues to suffer damage, including economic harm, as a result of IPCC's infringement in an amount to be proven at trial.

84. IPCC had actual knowledge of the ’385 Patent, and knew or should have known that its actions constituted infringement of the ’385 Patent or at least an unjustifiably high risk of infringement of the ’385 Patent.

85. CPC has been and will continue to be irreparably harmed by IPCC’s infringement of the ’385 Patent.

86. CPC has no adequate remedy at law for IPCC’s infringement of the ’385 Patent.

87. On information and belief, IPCC’s infringement of the ’385 Patent will continue unless enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, CPC prays for judgment against IPCC as follows:

A. A judgment and order that IPCC has infringed the ’666 Patent by making, using, offering to sell, selling, and/or importing the Accused Totes into the United States;

B. A judgment and order that IPCC has infringed the ’239 Patent by making, using, offering to sell, selling, and/or importing the Accused Lid into the United States;

C. A judgment and order that IPCC has infringed the ’385 Patent by making, using, offering to sell, selling, and/or importing the Accused Latch into the United States;

D. A judgment and order permanently enjoining IPCC and its affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with IPCC, from infringing the ’666 Patent;

E. A judgment and order permanently enjoining IPCC and its affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with IPCC, from infringing the ’239 Patent;

F. A judgment and order permanently enjoining IPCC and its affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with IPCC, from infringing the ’385 Patent;

G. A judgment and order that IPCC’s infringement of the Asserted Patents has been willful;

H. A judgment and order requiring IPCC to pay CPC damages adequate to compensate CPC for IPCC’s infringement of the Asserted Patents pursuant to 35 U.S.C. § 284, or the total profit made by IPCC from its infringements of the ’239 and ’385 Patents pursuant to 35 U.S.C. § 289;

I. A judgment and order requiring IPCC to pay CPC supplemental damages or profits for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

J. A judgment and order requiring IPCC to pay CPC increased damages up to three times the amount found or assessed pursuant to 35 U.S.C. § 284;

K. A judgment and order requiring IPCC to pay CPC pre-judgment and post-judgment interest on any damages or profits awarded;

L. A determination that this action is an exceptional case pursuant to 35 U.S.C. § 285;

M. An award of CPC’s attorneys’ fees for bringing and prosecuting this action;

N. An award of CPC’s costs and expenses incurred in bringing and prosecuting this action; and

O. Such further and additional relief as this Court deems just and proper.

**JURY DEMAND**

CPC demands a trial by jury of all issues so triable.

Dated: August 17, 2026

Respectfully submitted,

*/s/ Alan H. Norman*

Alan H. Norman, MO 38555
THOMPSON COBURN LLP
One US Bank Plaza
Saint Louis, MO 63101
P: (314) 552-6000
F: (314) 552-7000
anorman@thompsoncoburn.com

Brendan M. Bement, IL 6338045
THOMPSON COBURN LLP
55 East Monroe Street, 37th Floor
Chicago, IL 60603
P: (312) 346-7500
F: (312) 580-2201
bbement@thompsoncoburn.com

*Attorneys for Plaintiff Creative Plastic Concepts, LLC*